UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES MASQUEDA SERRANO,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT RUDAS, et al.,<br><br>Defendants. | Case No.: 1:22-cv-00950-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FOLLOWING SCREENING OF THE COMPLAINT**<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff Andres Masqueda Serrano is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

//

//

## II.   PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B.  Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### III. DISCUSSION

#### A. Plaintiff's Complaint

Plaintiff names Robert Rudas and Ana De La Sierra, both physicians, as defendants in this action. (Doc. 1 at 1-2.) He seeks damages totaling $4,000,000, costs of suit, jury trial and declaratory relief. (*Id*. at 3, 10.) The complaint is supported by several exhibits. (Doc. 1-1 at 2-44.)

#### B. The Factual Allegations

Plaintiff states that in 2008 "Dr. Bozic[1] performed a hinged TKA" negligently, leading to his severe pain in 2009 and a corrective surgery on his right leg. (Doc. 1 at 3.) He asserts the "femoral component was grossly loose and was removed." (*Id.*)

Plaintiff contends that while he was incarcerated at Mule Creek State Prison in 2018, he submitted health care request forms advising Defendant Rudas he was in severe pain. (Doc. 1 at 3.) On June 12, 2018, Plaintiff was seen by orthopedic surgeon Casey who found Plaintiff was unable to bear weight on his right leg, noting "concern for hardware malfunction." (*Id.* at 3-4.) The surgeon requested an orthopedic surgery consultation for further evaluation "and guidance in management, including possible surgical intervention." (*Id.* at 4.) Plaintiff asserts that on June 15, 2018, he reported to "Dr. Matharu" that he was unable to sleep and could not perform his daily activities. (*Id.*) They discussed Dr. Casey's findings and Dr. Matharu advised Plaintiff he would prescribe pain medication. (*Id.*) When the prescription for pain medication expired, Plaintiff

---

[1] Doctors Bozic, Casey and Matharu are not named as defendants in this action.

3

alleges he sent another health care request to Defendant Rudas on August 13, 2018. (*Id*.) Plaintiff then learned that although Rudas had never examined Plaintiff, Rudas discontinued the prescription. (*Id*.) On October 15, 2018, after many health care requests, Plaintiff was seen by Defendant Rudas. (*Id*.) Plaintiff advised Rudas of his severe pain, inability to sleep, swelling, and inability to complete his daily activities. (*Id*. at 4-5.) He requested pain medication. (*Id*. at 5.) During an examination of his knee, Plaintiff advised Rudas he had fallen in the shower and that "most of the time" he cannot get to chow hall to eat. (*Id*.) Plaintiff advised Rudas that if he did not receive "helpful medical treatment" or "helpful medication," he intended to file a grievance or appeal against Defendant Rudas. (*Id*.) Plaintiff asserts Rudas then asked him to leave. (*Id*.) Plaintiff contends Rudas knowingly and willingly denied him "helpful medical treatment." (*Id*.)

Plaintiff alleges that on October 23, 2018, he saw Defendant Rudas again and advised him of his severe pain and that "the creams and other medication" were not helpful. (Doc. 1 at 5.) Plaintiff advised Rudas that his leg was "swollen bad," that he could not sleep and could not complete his daily activities. (*Id*.) Plaintiff also advised Rudas the previous pain medication had been helping and asked why it had been discontinued. (*Id*.) He contends Rudas told him he would not prescribe morphine for Plaintiff's pain. (*Id*.) When Plaintiff stated to Rudas he was in "severe chronic pain" and repeated his request for helpful pain medication or medical treatment, Rudas told Plaintiff they were finished and refused to prescribe pain medication or additional treatment. (*Id.* at 5-6.)

On November 7, 2018, Plaintiff was again seen by Defendant Rudas. (Doc. 1 at 6.) He advised Rudas the medication Rudas ordered "did not work." (*Id*.) Plaintiff contends despite seeing that his leg was swollen, Rudas refused to prescribe any helpful pain medication or medical treatment. (*Id*.)

On December 3, 2018, when Plaintiff "could not walk at all," he was taken to the clinic and seen by Defendant Rudas. (Doc. 1 at 6.) Plaintiff's leg was swollen, and he was in severe pain. (*Id*.) Plaintiff contends Rudas "only wanted to know why [Plaintiff] did not go to [his] medical appointment[s]." (*Id*.) Plaintiff advised Rudas he was in too much pain. (*Id*.) He contends Rudas knew he was in severe pain and "may even lose his leg," but continued to refuse to provide

4

1     any helpful medical treatment or pain medication. (*Id.* at 6-7.)

2           Plaintiff alleges that after he was transferred to Pleasant Valley State Prison in 2019, he

3     submitted health care requests as his pain was severe. (Doc. 1 at 7.) He could not sleep or

4     complete his daily activities. (*Id.*) Plaintiff was examined by Defendant De La Sierra and

5     contends his leg was swollen and hot to the touch. (*Id.*) De La Sierra told Plaintiff "let's see if the

6     swollen [sic] goes down on [his] next visit." (*Id.*) When Plaintiff saw De La Sierra on March 19,

7     2019, he reported severe pain, an inability to sleep, swelling, and that it felt like his leg was

8     "getting ready to snap." (*Id.*) De La Sierra told Plaintiff to "stop being a baby" and got angry

9     when he told her he wanted to see her supervisor. (*Id.*) Plaintiff states he "started calling her

10    names and told [De La Sierra] he wanted to talk to her supervisor." (*Id.*) De La Sierra "had an

11    officer make" Plaintiff leave. (*Id.*)

12          On April 2, 2019, Plaintiff advised Defendant De La Sierra he was in severe pain, could

13    not sleep, that his leg was hot to the touch, and felt like it was "getting ready to snap." (Doc. 1 at

14    8.) After an examination, De La Sierra advised Plaintiff she would prescribe morphine. (*Id.*) A

15    week later, he saw De La Sierra again, advising he continued to experience pain and swelling.

16    (*Id.*) After examining Plaintiff's leg, De La Sierra told him to "stop being a baby" and indicated

17    she would prescribe "some pain medication and the swelling and tenderness should go away."

18    (*Id.*) When he asked about seeing a specialist, De La Sierra told Plaintiff "we don't need to waste

19    any money on a specialist" and that she knew what she was doing. (*Id.*) Plaintiff contends he

20    asked to see a specialist for months, but De La Sierra refused his requests. (*Id.*) He asserts she

21    knew something was wrong but refused to provide him the treatment he needed. (*Id.*) That same

22    day, April 9, 2019, Plaintiff "went man down" and was taken to the hospital. (*Id.*) Plaintiff

23    contends a hospital physician told him his leg was "really, really bad and needs to be removed"

24    and that it had been infected for months. (*Id.* at 8-9.) Plaintiff alleges he was so depressed that he

25    could only think about the loss of his leg and the numerous times he asked Defendants Rudas and

26    De La Sierra to be seen by a specialist. (*Id.* at 9.) He wondered if he would have "to live life with

27    just one leg." (*Id.*)

28          When he was transferred to the California Medical Facility, Plaintiff was told to see the

psychiatrist. (Doc. 1 at 9.) Plaintiff did so and the psychiatrist prescribed medication for his depression. (*Id.*)

### C. Plaintiff's Claims

The Court construes Plaintiff's complaint to allege Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Rudas and De La Sierra.

<u>Applicable Legal Standards</u>

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

6

1   As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

**D. Analysis**

<u>Claim Against Defendant Rudas</u>

Liberally construing the complaint, Plaintiff plausibly alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Rudas. Plaintiff alleges he has a serious medical condition—chronic severe pain in his right leg following earlier surgeries—and thus meets the first prong of the deliberate indifference test. *Colwell*, 763 F.3d at

1066. Plaintiff also meets the second prong of the test by alleging Defendant Rudas failed to respond to his pain by denying pain medication and appropriate medical treatment, resulting in further harm to Plaintiff. *Wilhelm*, 680 F.3d at 1122.[2]

### Claim Against Defendant De La Sierra

Even liberally construing the complaint, Plaintiff fails to state a cognizable Eighth Amendment deliberate indifference to serious medical needs claim against Defendant De La Sierra.

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Unexhausted claims may not be brought to court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524). Exhaustion must occur prior to filing suit. *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Plaintiff may not exhaust while the suit is pending. *Id*. Courts may dismiss a claim if failure to exhaust is clear on the face of the complaint. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

Here, Plaintiff acknowledges he failed to exhaust his administrative remedies concerning any complaint or claim involving De La Sierra. (*See* Doc. 1 at 1, 2 [states he "did not" exhaust his administrative remedies for this defendant because he was "in a depressed state of mind"], 9 ["did not file an inmate appeal on Dr. De La Sierra"].) Further, a review of the exhibits provided confirms as much. (*See* Doc. 1-1 at 21-36.) Therefore, it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, as required by the PLRA, concerning any complaint or claim involving De La Sierra. *Jones*, 549 U.S. at 211; *Albino*, 747

---

[2] Plaintiff is advised that "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981) (internal citation omitted). And that a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989).

F.3d at 1166.  Further, Plaintiff's explanation for failing to exhaust – that he was depressed – does not satisfy the narrow exception to exhaustion where the generally available remedy was rendered "effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Because Plaintiff failed to exhaust his administrative remedies concerning any claim against Defendant De La Sierra, the undersigned will recommend that this claim be dismissed.

### IV.     CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, this Court finds Plaintiff states a cognizable Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Rudas only. The Court further finds it is clear from the face of the complaint that Plaintiff failed to exhaust his administrative remedies concerning any claim against Defendant De La Sierra. Therefore, **IT IS HEREBY RECOMMENDED** that:

1. This action **PROCEED** *only* on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Rudas;
2. Defendant De La Sierra be **DISMISSED** from this action; and
3. Any remaining claims in Plaintiff's complaint be **DISMISSED**.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 15, 2024**                              _____
                                                                                     UNITED STATES MAGISTRATE JUDGE

9