1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   ANDRES MASQUEDA SERRANO,           Case No.: 1:22-cv-00950-KES-CDB

12               Plaintiff,             **FINDINGS AND RECOMMENDATIONS
                                        TO GRANT DEFENDANT'S PARTIAL
13         v.                           MOTION FOR SUMMARY JUDGMENT**

14   ROBERT RUDAS, et al.,              (Doc. 39)

15               Defendants.            **14-DAY OBJECTION PERIOD**

16

17

18         Plaintiff Andres Masqueda Serrano is proceeding pro se and *in forma pauperis* in this civil

19   rights action pursuant to 42 U.S.C. § 1983.

20         **I.      INTRODUCTION**

21         On November 19, 2024, Defendant Rudas filed a timely partial motion for summary

22   judgment alleging Plaintiff failed to exhaust his administrative remedies. (Doc. 39.) When

23   Plaintiff failed to file a response to Defendant's motion, the Court issued its Order to Show Cause

24   (OSC) in Writing Why Sanctions Should Not Be Imposed for Plaintiff's Failure to File an

25   Opposition or Statement of Non-Opposition on December 18, 2024. (Doc. 42.) Following an

26   extension of time, Plaintiff filed an opposition on February 6, 2025. (Doc. 47.) On February 18,

27   2025, Defendant filed a reply. (Doc. 48-2.)

28

On March 14, 2025, Plaintiff filed a document titled "Reply Opposition to Defendant Motion for Summary Judgment Based on Failure to Exhaust Administrative Remedies." (Doc. 49.) On March 27, 2025, Defendant moved ex parte to strike Plaintiff's filing as a sur-reply. (Doc. 50.) This Court issued its Order Granting Defendant's Ex Parte Application to Strike Plaintiff's Sur-reply on March 31, 2025. (Doc. 51.) It found the following concerning Plaintiff's sur-reply: (1) any sur-reply would be untimely; (2) Defendant did not submit new evidence in reply; (3) Plaintiff did not assert a relevant judicial opinion was issued after briefing; and (4) there was no good cause to permit a sur-reply. (*Id*. at 4.) Thus, Plaintiff's sur-reply filed March 14, 2025, was stricken. (*Id*. at 5.)

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff states that in 2008 "Dr. Bozic performed a hinged TKA negligently, leading to his severe pain in 2009 and a corrective surgery on his right leg. (Doc. 1 at 3.) He asserts the "femoral component was grossly loose and was removed." (*Id*.)

Plaintiff contends that while he was incarcerated at Mule Creek State Prison in 2018, he submitted health care request forms advising Defendant Rudas he was in severe pain. (Doc. 1 at 3.) On June 12, 2018, Plaintiff was seen by orthopedic surgeon Casey who found Plaintiff was unable to bear weight on his right leg, noting "concern for hardware malfunction." (*Id*. at 3-4.) The surgeon requested an orthopedic surgery consultation for further evaluation "and guidance in management, including possible surgical intervention." (*Id*. at 4.) Plaintiff asserts that on June 15, 2018, he reported to "Dr. Matharu" that he was unable to sleep and could not perform his daily activities. (*Id*.) They discussed Dr. Casey's findings and Dr. Matharu advised Plaintiff he would prescribe pain medication. (*Id*.) When the prescription for pain medication expired, Plaintiff alleges he sent another health care request to Defendant Rudas on August 13, 2018. (*Id*.) Plaintiff then learned that although Rudas had never examined Plaintiff, Rudas discontinued the prescription. (*Id*.) On October 15, 2018, after many health care requests, Plaintiff was seen by Defendant Rudas. (*Id*.) Plaintiff advised Rudas of his severe pain, inability to sleep, swelling, and inability to complete his daily activities. (*Id*. at 4-5.) He requested pain medication. (*Id*. at 5.) During an examination of his knee, Plaintiff advised Rudas he had fallen in the shower and that "most of the time" he cannot get to chow hall to eat. (*Id*.) Plaintiff advised Rudas that if he did not receive "helpful medical treatment" or "helpful medication," he intended to file a grievance or appeal against Defendant Rudas. (*Id*.) Plaintiff asserts Rudas then asked him to leave. (*Id*.) Plaintiff contends Rudas knowingly and willingly denied him "helpful medical treatment." (*Id*.)

Plaintiff alleges that on October 23, 2018, he saw Defendant Rudas

2

again and advised him of his severe pain and that "the creams and other medication" were not helpful. (Doc. 1 at 5.) Plaintiff advised Rudas that his leg was "swollen bad," that he could not sleep and could not complete his daily activities. (*Id*.) Plaintiff also advised Rudas the previous pain medication had been helping and asked why it had been discontinued. (*Id*.) He contends Rudas told him he would not prescribe morphine for Plaintiff's pain. (*Id*.) When Plaintiff stated to Rudas he was in "severe chronic pain" and repeated his request for helpful pain medication or medical treatment, Rudas told Plaintiff they were finished and refused to prescribe pain medication or additional treatment. (*Id*. at 5-6.)

On November 7, 2018, Plaintiff was again seen by Defendant Rudas. (Doc. 1 at 6.) He advised Rudas the medication Rudas ordered "did not work." (*Id*.) Plaintiff contends despite seeing that his leg was swollen, Rudas refused to prescribe any helpful pain medication or medical treatment. (*Id*.)

On December 3, 2018, when Plaintiff "could not walk at all," he was taken to the clinic and seen by Defendant Rudas. (Doc. 1 at 6.) Plaintiff's leg was swollen, and he was in severe pain. (*Id*.) Plaintiff contends Rudas "only wanted to know why [Plaintiff] did not go to [his] medical appointment[s]." (*Id*.) Plaintiff advised Rudas he was in too much pain. (*Id*.) He contends Rudas knew he was in severe pain and "may even lose his leg," but continued to refuse to provide any helpful medical treatment or pain medication. (*Id*. at 6-7.)

(*See* Doc. 17 at 3-5.)[1]

### III.    SUMMARY OF THE PARTIES' POSITIONS

#### *Defendant's Summary Judgment Motion re Exhaustion*

Defendant Rudas contends Plaintiff did not properly exhaust available administrative remedies regarding his claim that Rudas failed to provide adequate medical treatment for his knee. Rudas asserts Plaintiff's grievance "did not identify any claim, separate and apart from his claim that Dr. Rudas discontinued his pain medication." Thus, Rudas asks this Court to grant partial summary judgment and to enter judgment in his favor "on any medical-deliberate-indifference claims beyond Serrano's claim that Dr. Rudas discontinued his pain medication."

#### *Plaintiff's Opposition*

After largely repeating the allegations in his complaint, Plaintiff contends "for many months Plaintiff has been in severe pain unable to get any helpful pain medication or medical

---

[1] The facts pertaining to previously named defendant Ana De La Sierra have been omitted as that individual was dismissed from this action on March 26, 2024. (*See* Doc. 19.)

treatment," referring to his exhibit number 1. Plaintiff asserts the exhibit will show Rudas knew he was in severe pain and "may even lose his leg" and still refused to provide "any helpful treatment or pain medication." Plaintiff argues Defendant "is using a new law that was not even in the" California Code of Regulations concerning the grievance procedures applicable to his claims, that he "was in complete compliance" with the 2018 regulations and exhausted "all available remedies." Plaintiff argues Rudas was deliberately indifferent to his serious medical needs and asks the Court to deny summary judgment. Exhibit number 1 is comprised of the following documents: (1) partial Progress Note dated September 18, 2018 (pages 1 & 2 of 3); (2) Final Report dated June 12, 2018; (3) Chronic Pain Provider-Patient Agreement/Informed Consent for Opioid Pain Medication form dated June 15, 2018; (4) Health Care Services Headquarters' Level Response dated March 13, 2019, concerning MCSP HC 18002563; (4) Health Care Grievance form dated September 9, 2018, assigned MCSP HC 18002563; (5) Health Care Services Institutional Level Response dated November 9, 2018, concerning MCSP HC 18002563; (6) duplicate of partial Progress Note dated September 18, 2018 (pages 1 & 2 of 3); (7) Orders concerning Patient Care dated November 7, 2018; (8) Orders concerning Patient Care dated November 20, 2018; and (9) Orders concerning Patient Care dated December 3, 2018. Exhibit two is comprised of eleven copied pages from Title 15, Article 8, sections 3084 through 3085.

### *Defendant's Reply*

Defendant Rudas contends Plaintiff's challenges concerning four of Defendant's undisputed facts do not rise to the level of genuinely disputed issues of material fact. Rudas maintains Plaintiff's relevant grievance did not put the prison on notice that Rudas allegedly failed to provide appropriate medical treatment resulting in Plaintiff's further harm and that Plaintiff fails to present evidence to the contrary. Further, Rudas contends Plaintiff's argument that "Mule Creek and CCHCS waived the defense of failure to exhaust by responding to his grievance is wrong," and that at all relevant times "across all amendments … inmates were required to include the issue and any related set of issues, and include all facts known to them about the issue or set of issues." Because Plaintiff did not do so, Rudas asserts he is entitled to

partial summary judgment. Next, Rudas argues Plaintiff's dispute concerning "SDF 2" does not raise a genuine dispute of material fact. Further, Rudas contends Plaintiff's disputes "SDF 3 and 4" do not demonstrate an application of "the incorrect section of the Code of Regulations to Claim Two" because inmates have always been "required to legibly, or clearly and coherently document all information known and available to the grievant regarding the issue or set of issues." Rudas maintains Plaintiff frequently used the grievance process prior to filing his complaint and that Plaintiff's argument concerning 2020 amendments to the grievance procedure are not relevant to his 2018 grievance. Lastly, Rudas contends this Court should disregard Plaintiff's additional facts and arguments concerning the merits of his claims.

## IV.    APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## B. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Id.* at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through

1    machination, misrepresentation, or intimidation." *Id*. at 643-44.

2        When the district court concludes that the prisoner has not exhausted administrative

3    remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v.*

4    *Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by

5    *Albino*, 747 F.3d at 1168-69.

6        "If a motion for summary judgment is denied, disputed factual questions relevant to

7    exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that

8    remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust

9    available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

10            **C.  CDCR Grievance Process**

11        The California Department of Corrections and Rehabilitation (CDCR) has an

12    administrative grievance system for prisoners to appeal a policy, decision, action, condition, or

13    omission by the department or staff if it has an adverse effect on prisoner health, safety, or

14    welfare. Cal. Code Regs. tit. 15, §§ 3084.1(a) (2018), 3999.226(a). Compliance with 42 U.S.C.

15    section 1997e(a) requires California-state prisoners to use CDCR's grievance process to exhaust

16    their claims prior to filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010);

17    *see also Woodford*, 548 U.S. at 85-86. Administrative appeals are generally subject to two to

18    three levels of review before the remedy is deemed exhausted. Cal. Code Regs. tit. 15, §§

19    3084.1(b) (2018), 3084.7(d)(3) (2018), 3999.226(g), 3999.230(h); *see also Sapp*, 623 F.3d at 818.

20        **V.    EVIDENTIARY MATTERS**

21        Plaintiff was served with the following *Rand*[2] warning:

22        **Please Take Notice that** the defendant has made a motion for
         summary judgment by which he seeks to have a portion of your case
23        dismissed. A motion for summary judgment under Rule 56 of the
         Federal Rules of Civil Procedure will, if granted, end your case. Rule
24        56 tells you what you must do in order to oppose a motion for
         summary judgment. Generally, summary judgment must be granted
25        when there is no genuine issue of material fact—that is, if there is no
         real dispute about any fact that would affect the result of your case,
26        the party who asked for summary judgment is entitled to judgment
         as a matter of law, which may end a portion of your case. When a
27

28    [2] *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

1

2

3

4

5

6

7

> party you are suing makes a motion for summary judgment that is
> properly supported by declarations (or other sworn testimony), you
> cannot simply rely on what your complaint says. Instead, you must
> set out specific facts in declarations, depositions, answers to
> interrogatories, or authenticated documents, as provided in Rule
> 56(e), that contradict the facts shown in the defendant's declarations
> and documents and show that there is a genuine issue of material fact
> for trial. If you do not submit your own evidence in opposition,
> summary judgment, if appropriate, may be entered against you. If
> summary judgment is granted, a portion of your case will be
> dismissed and there will be no trial on that portion. *Rand v. Rowland*,
> 154 F.3d 952, 962-63 (9th Cir. 1998).

8

9

(Doc. 39-3 at 2.) The notice did not include language concerning this Court's Local Rule 260, that provides as follows:

10

11

12

13

14

15

16

17

> Any party opposing a motion for summary judgment or summary
> adjudication shall reproduce the itemized facts in the Statement of
> Undisputed Facts and admit those facts that are undisputed and deny
> those that are disputed, including with each denial a citation to the
> particular portions of any pleading, affidavit, deposition,
> interrogatory answer, admission, or other document relied upon in
> support of that denial. The opposing party may also file a concise
> "Statement of Disputed Facts," and the source thereof in the record,
> of all additional material facts as to which there is a genuine issue
> precluding summary judgment or adjudication. The opposing party
> shall be responsible for the filing of all evidentiary documents cited
> in the opposing papers. See L.R. 133(j). If a need for discovery is
> asserted as a basis for denial of the motion, the party opposing the
> motion shall provide a specification of the particular facts on which
> discovery is to be had or the issues on which discovery is necessary.

18

Local Rule 260(b).

19

20

21

22

23

Nevertheless, where Plaintiff's verified complaint or evidence submitted in support of any opposition to Defendant's motion for summary judgment call into dispute Defendant's proffered facts, the Court considered the complaint and any evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (the court considers as evidence those parts of the verified complaint based on plaintiff's personal knowledge).

24

## VI.    DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

25

26

27

1.  Plaintiff Andres Serrano is in the custody of the California Department of Corrections and Rehabilitation (CDCR). Serrano is presently an inmate at California Medical Facility. In 2018, Serrano was an inmate at Mule Creek State Prison (Mule Creek).

28

2.  Serrano filed his Complaint on July 28, 2022, alleging that Defendant R. Rudas, M.D.

9

1        failed to address pain in his knee resulting from prior surgeries, and failed to provide

2        appropriate medical care resulting in the amputation of his leg.

3    3.  The health care grievance process for prisons is codified in California Code of

4        Regulations, title 15, sections 3999.225, et seq. Health care grievances are subject to

5        two levels of review, an institutional level of review, and a headquarters level of

6        review. After the headquarters disposition a health care grievance is deemed

7        exhausted.

8    4.  Health care grievances are tracked and maintained in an electronic database known as

9        the Health Care Appeals and Risk Tracking System (HCARTS). HCARTS is kept as a

10       regularly conducted activity and the computer entries are made at or near the time of

11       the occurrence by the employee who is processing the health care grievance.

12   5.  Before September 1, 2017, health care appeals were governed by sections §§ 3084 -

13       3086 of Title 15 of the California Code of Regulations, which govern the inmate

14       appeal process. Under that process, health care appeals were subject to three levels of

15       review before administrative remedies were deemed exhausted. Cal. Code Regs. tit.

16       15, § 3084.7(d)(3) (2016). Exceptions to this process are set forth in section § 3084.9

17       of Title 15.

18   6.  New procedures related to grievances were officially enacted as regulations under Cal.

19       Code Regs. tit. 15, § 3087 on September 1, 2017. However, in 2019, the health care

20       grievances section was changed without regulatory effect and can now be found at

21       Title 15, §§ 3999.225 – 3999.237 of the California Code of Regulations. Under these

22       regulations, inmates may grieve complaints regarding health care policies, decisions,

23       actions, conditions, or omissions using a CDCR 602 HC form within 30 calendar days

24       of: the action or decision being grieved; or initial knowledge of the action or decision

25       being grieved. Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a), 3999.227(b)(1)-(2)

26       (2019). Such complaints are now called health care "grievances" and are subject to

27       two levels of review, an institutional level of review and a headquarters level of

28       review. Cal. Code Regs. tit. 15, § 3999.226(a)(1) (2019). Health care grievances are

subject to a headquarters' disposition before administrative remedies are deemed

exhausted. Cal. Code Regs. tit. 15, § 3999.226(g) (2019). The grievant shall document

clearly and coherently all information known and available to the grievant regarding

the issue. Cal. Code Regs. tit. 15, § 3999.227(g) (2019). The grievant shall include any

involved staff member's last name, first initial, title or position, and the date and

description of their involvement. Cal. Code Regs. tit. 15, § 3999.227(g)(1) (2019). If

the grievant does not have information to identify involved staff member(s), the

grievant shall provide any other available information that may assist in processing the

health care grievance. Cal. Code Regs. tit. 15, § 3999.227(g)(2) (2019).

7.  On September 9, 2018, Serrano submitted grievance MCSP HC18002563 (Grievance)

asserting that he was being denied morphine for chronic pain. He stated in pertinent

part: [¶] "At that time Dr. K. Matharu put me on a pain management treatment which

was (1) one 15 mg IR morphine twice a day. He then had me sign a (CDCR 7474)

(See Attachment). On (8-13-18) my pain meds ran out. I put in a renewal order CDCR

7362 Form as I did the month prior (7-14-18). This time my pain meds were

discontinued by Dr. R. Rudas. I then put in a CDCR 7362 form on 8-1618 (see

attachment). I was seen by (RN A. Kourtnee). RN Kourtnee evaluated me and seen

Dr. K. Matharu 'Notes' on (6-15-18) via computer she said she would ask Dr. R.

Rudas to renew my pain meds. When she returned RN A. Kourtnee told me Dr. R.

Rudas said quote 'he would not renew my pain medication, that theres a new sheriff in

town.'"

8.  Serrano was sent the Institutional Level Response to the Grievance on November 9,

2018, in which he was advised: [¶] "You had a CDCR 7362 Health Care Services

Request For (7362) RN appointment on August 20, 2018, requesting the medication,

Morphine be renewed. The primary care provider (PCP) was consulted and stated

opiates are not indicated for chronic pain. You were educated to continue Naproxen

for pain. RN Martinez contacted your PCP and inquired fi there was anything else that

can be done for your pain management while you are awaiting your surgical consult

11

1  and your PCP responded that you would be scheduled to be seen to consider Cymbalta

2  (NON-NARCOT1C) treatment."

3  9. Serrano was sent the Headquarters Level Response on March 13, 2019, stating No

4  Intervention. The Headquarters Level Response advised: [¶] "Your most recent

5  primary care provider evaluation for issues related to this grievance was on February

6  19, 2019; the provider noted a history of chronic right knee pain post failed knee

7  replacement surgeries. An examination was completed, noting a referral for an

8  orthopedic surgery consultation was submitted. There is no documentation to support

9  the primary care provider determined morphine was medically indicated at that time.

10  Records indicate you have a primary care provider appointment currently pending

11  scheduling to review the orthopedic surgery consultation referral. Your current

12  medication profile indicates orders for cholecalciferol and acetaminophen for pain."

13  10. At the request of defense counsel, CCHCS reviewed the HCARTS database for

14  grievances submitted by Serrano between 2015 and July 28, 2022. Serrano submitted

15  the listed grievances and received dispositions as follows.

16  a. MCSP HC 15046508 (Exhibit C) was received at the institutional level on

17  April 6, 2015. The plaintiff's stated issues included: chrono issues (cell

18  feeding; device issues (brace); and chrono issues (all chronos updated). This

19  grievance was accepted for processing. The plaintiff was issued an Institutional

20  Level Response dated May 13, 2015, and it was granted in part. A second level

21  decision was issued on July 10, 2015, and the appeal was granted in part. The

22  grievance was received for headquarters level review on August 7, 2015, and

23  the plaintiff was issued a Headquarters Level Response dated October 15,

24  2015, denying the grievance.

25  b. MCSP HC 16048321 (Exhibit D) was received at the institutional level on

26  March 5, 2016. Serrano's stated issues included: disagreement with treatment

27  (primary care provider [none identified]) and chrono issues (cell feeding). [¶]

28  The text of Serrano's grievance states: [¶] "Since 7/12/15 I've been waiting for

an M.R.I. for my possible meniscus tear. My concern is the floors are wet in the chow hall & I have a chrono from I.C.C. Stating my chrono is not carrying tray but not walking on wet floors. Clearly stated I want my cell feed back and for it to be permanant [sic] to avoid further issue. Note as well I was given this chrono on 3/11/16. This is what my 602 is about." [¶] Plaintiff attached an accommodation chrono for housing on lower tier and a lower bunk issued by Clinician G. Pettersen on July 2, 2015, which expired on October 2, 2015, and a permanent accommodation chrono for lower bunk, lower tier housing, an inmate attendant/assistance, transport vehicle with left, extra time for meals, lifting restrictions and no rooftop work issued by Clinician Wesley Vaughn on March 11, 2016 with no expiration. [¶] This grievance was accepted for processing. The plaintiff was issued a First Level Response dated May 4, 2016, and it was granted in part. A second level decision was issued on June 22, 2016, and the appeal was denied.

c.  MCSP HC 16049319 (Exhibit E) was received at the institutional level on August 29, 2016. Serrano's stated issues included: medication (Med Renewal). This grievance was accepted for processing. The plaintiff was issued a First Level Response dated October 7, 2016, denying the grievance.

d.  MCSP HC 17000356 (Exhibit F) was received at the institutional level on October 24, 2017. Serrano's stated issues included: Referral (orthopedics) and Medical Device (orthopedic Shoe/Supports). This grievance was accepted for processing. The plaintiff was issued an Institutional Level Response dated January 2, 2018, with a disposition of No Intervention.

e.  MCSP HC 17050791 (Exhibit G) was received at the institutional level on March 21, 2017. Serrano's stated issues included: Disagreement with Treatment (Primary Care Provider) [Vaughn] and Medication (Lotion/Cream). This grievance was accepted for processing. The plaintiff was issued an Institutional Level Response dated May 2, 2017, with a disposition of granted

1    in part. A second level decision was issued on June 22, 2017, denying the

2    grievance.

3    (Doc. 39-2 [hereafter UDF].)

4    **VII.    RELEVANT GRIEVANCE: MCSP HC 18002563[3]**

5    Plaintiff's relevant health care grievance was signed and dated September 9, 2018, and

6    assigned log number MCSP HC 18002563. It reads as follows:

> On 2-26-18 Dr. K. Matharu requested an orthopedic surgery
> consultation. On 6-12-18 I was seen by Dr. John Casey at San
> Joaquin Hosp. His examination finding (see attachment) show my R
> TKA w/multiple revision, function decline, loosening, and severe
> atrophy with more severe pain since last seen by Dr. Casey on 4-12-
> 16 (see attachment). I was seen again by Dr. Matharu on 6-15-18.
> We discussed Dr. Casey's findings and at that time Dr. Matharu put
> me on a pain management treatment which was (1) one 15 mg IR
> morphine twice a day. He then had me sign a CDCR 7474 (see
> attachment). On 8-13-18 my pain meds ran out. I put in renewal order
> CDCR 7362 form as I did the month prior (7-14-18). This time my
> pain meds were discontinued by Dr. R. Rudas. I then put in a CDCR
> 7362 form on 8-16-18 (see attachment). I was seen by RN A.
> Kourtnee. RN Kourtnee evaluated me and seen Dr. Matharu "Notes"
> on 6-15-18 via computer. She said she would ask Dr. Rudas to renew
> my pain meds. When she returned RN Kourtnee told me Dr. Rudas
> said quote "He would not renew my pain medication, that there's a
> new sheriff in town." This is an emergency 602. I've been without
> my pain medication since 8-13-18-cannot bear any weight on my
> r/leg, in severe pain.

18    (*See* Doc. 39-4 at 18 [Section A], 20 [Continuation, Section A].)[4] Plaintiff attached supporting

19    documents including "(CDC 7243-(Office/Clinic Note 6-12-18) – (Preliminary Consultation 4-

20    12-16 1-of-2) – (CDCR 7474 6-15-18) – (CDC 7362 8-16-18).") (*Id.*)

21    In the institutional level response dated November 9, 2018, the issues are described as (1)

22    "Disagrees with treatment by primary care provider (PCP)," (2) "Disagrees with Morphine being

23    discontinued," and (3) "To be provided Morphine." (*See* Doc. 39-4 at 22.) The disposition is

---

[3] The Court has reviewed all exhibits submitted with Defendant's motion. It has elected not to summarize health care grievances that are not relevant to whether Plaintiff exhausted his specific claim that Defendant Rudas failed to provide him adequate medical care in 2018 as these other grievances involve other issues and were submitted prior to the grievance at issue here. (*See, e.g.*, 39-4 at 43-63 [Exhibit C - MCSP HC 15046508], 64-80 [Exhibit D - MCSP HC 16048321], 81-85 [Exhibit E – MCSP HC 1604319], 86-100 [Exhibit F – MCSP HC 17000356], 101-125 [Exhibit G – MCSP HC 17050791].)

[4] Minor modifications were made to punctuation and spelling, but do not affect the substance of the grievance.

14

1    "Intervention" and the basis for the disposition is as follows:

2            You had a CDCR 7362 Health Care Services Request form (7362)
        RN appointment on August 20, 2018, requesting the medication,
3        Morphine be renewed. The primary care provider (PCP) was
        consulted and stated opiates are not indicated for chronic pain. You
4        were educated to continue Naproxen for pain. RN Martinez
        contacted your PCP and inquired if there was anything else that can
5        be done for your pain management while you are awaiting your
        surgical consult and your PCP responded that you would be
6        scheduled to be seen to consider Cymbalta (NON-NARCOTIC)
        treatment.
7

8    (*Id.* at 23.) Plaintiff was advised that if he was "dissatisfied with the Institutional Level

9    Response," he was to "explain the reason in Section B of the CDCR 602 HC, Health Care

10   Grievance, and submit the entire health care grievance package for headquarters' review. The

11   headquarters' level review constitutes the final disposition on your health care grievance and

12   exhausts your administrative remedies." (*Id.* at 24.)

13           Thereafter, Plaintiff explained his dissatisfaction with the institutional level response:

14           I am dissatisfied with the [institutional] level. I'm sending Doctor
        Rudas own documents as "evidence" of how his own assessment
15       shows how [severe] my situation is but yet he and the medical staff
        do nothing to help with my pain. I [suffered] daily as to where I can
16       not perform my ADLs and I [stopped] taking showers due to falling
        twice. Doctor Rudas discontinued my pain medication for no other
17       reason then to see me suffer and to torture me. The Cymbalta did not
        help me with pain and was discontinued also. I need help.
18

19   (*See* Doc. 19-20 [Section B].)

20           In the headquarters level response dated March 13, 2019, the issue identified in the appeal

21   is "Discontinued pain medication" and the medication at issue is identified as "Morphine." (*See*

22   Doc. 39-4 at 15.) The disposition is "No intervention." (*Id.*) In part, the response reads as follows:

23           Your health care grievance package, health record, and all pertinent
        departmental policies and procedures were reviewed. These records
24       indicate you are enrolled in the Chronic Care Program where your
        medical conditions and medication are closely monitored. Your
25       medical records support your having received evaluation and
        treatment was determined medically necessary, including but not
26       limited to: primary care provider evaluation, registered nurse
        assessment, durable medical equipment, and medication. Your most
27       recent primary care provider evaluation for issues related to this
        grievance was on February 19, 2019; the provider noted a history of
28       chronic right knee pain post failed knee replacement surgeries. An

1
2
3
4
5

> examination was completed, noting a referral for an orthopedic surgery consultation was submitted. There is no documentation to support the primary care provider determined morphine was medically indicated at that time. Records indicate you have a primary care provider appointment currently pending scheduling to review the orthopedic surgery consultation referral. Your current medication profile indicates orders for cholecalciferol and acetaminophen for pain.

6

(*See* Doc. 39-4 at 15-16.)

7

## VIII.   DISCUSSION

8

The Court must determine whether Plaintiff exhausted his administrative remedies

9

regarding his Eighth Amendment deliberate indifference to serious medical needs claim

10

specifically concerning the adequacy of medical treatment by Defendant Rudas. Rudas does not

11

argue that Plaintiff's claim concerning the discontinuation of morphine is not exhausted and the

12

record reveals that claim is, in fact, exhausted. The Court's focus is limited to determining

13

whether Plaintiff's MCSP HC 18002563 grievance is exhausted by sufficiently addressing, and

14

providing notice of, Plaintiff's claim as alleged in the operative complaint that Rudas failed to

15

provide him with adequate medical care or treatment.

16
17

**A.     Grievance MCSP HC 18002563 Did Not Exhaust Plaintiff's Claim Against Defendant Rudas Concerning the Adequacy of Medical Care Unrelated to the Discontinuation of Pain Medication**

18

**1.     Defendant Has Met His Initial Burden**

19

Defendant Rudas's evidence establishes there was an administrative remedy available to

20

Plaintiff at Mule Creek State Prison. *See* UDF 3-6. Further, Defendant's evidence establishes that

21

Plaintiff failed to exhaust that remedy as concerns his claim that Defendant failed to provide

22

adequate medical care. *See* UDF 7-10.

23

Specifically, the evidence reveals that the relevant grievance complained of Defendant

24

Rudas's discontinuation of prescription morphine in August 2018. UDF 7. The grievance did not

25

set forth any facts indicating that Defendant Rudas failed to provide adequate medical care. *Id*. In

26

fact, Plaintiff's operative complaint indicates that at the time Defendant discontinued Plaintiff's

27

morphine, Plaintiff had not yet been seen by Defendant Rudas. (*See* Doc. 1 at 4:22-27 ["Dr.

28

Rudas had discontinue my pain medication. Here is a doctor who have not even examining me

1    discontinue my pain medication"].)  While a grievance "need not include legal terminology or

2    legal theories," there is nothing in the relevant grievance that would alert prison officials to the

3    factual basis for Plaintiff's theory that Rudas failed to provide adequate medical care—the

4    grievance solely concerns Plaintiff's complaint that Rudas discontinued the morphine

5    prescription. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Thus, the undersigned

6    finds that MCSP HC18002563 failed to alert the prison to the nature of the wrong for which

7    redress is sought and provide sufficient information "to allow prison officials to take appropriate

8    responsive measures" with respect to whether Defendant Rudas failed to provide medical

9    treatment in violation of Plaintiff's Eighth Amendment rights.  *See id.* at 1121 (quoting *Johnson*

10   *v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004)).

11       To the extent the institutional level response to Plaintiff's grievance identifies three issues,

12   including Plaintiff's disagreement with his PCP, the Court finds that reference too relates directly

13   to Plaintiff's complaint regarding the discontinuation of prescription morphine when read in

14   context. Moreover, the headquarters level response references and considered only the

15   discontinuation of pain medication.

16       Significantly too, the Court notes Plaintiff's grievance is dated September 9, 2018, yet

17   Plaintiff's complaint indicates he was treated by Defendant Rudas on October 15, October 23,

18   November 7, and December 3, 2018. (*See* Doc. 1 at 4:28, 5:18, 6:10, 19-22; *see also* Doc. 47 at 2-

19   4 [same; Plaintiff's opposition].) Therefore, Plaintiff's complaints about the adequacy of any

20   treatment by Defendant Rudas had not yet arisen when Plaintiff submitted grievance MCSP HC

21   18002563. Thus, that grievance did not exhaust Plaintiff's claim against Rudas concerning the

22   adequacy of medical treatment. *Sapp*, 623 F.3d at 818; *Morton v. Hall*, 599 F.3d 942, 946 (9th

23   Cir. 2010) (finding grievance that complained of visitation restrictions and did not mention an

24   assault or that the visitation restriction was related to the assault was insufficient to put prison

25   officials on notice that staff conduct contributed to the assault); *O'Guinn v. Lovelock Correctional*

26   *Center*, 502 F.3d 1056, 1062 (9th Cir. 2007) (grievance requesting lower bunk due to plaintiff's

27   balance issues caused by previous brain injury did not exhaust claim that prison deprived plaintiff

28   of adequate mental health treatment); *see also, e.g.*, *Govea v. Fox*, No. 2:15-cv-02545 MCE DB

1   P, 2022 WL 4096178, at *8 (E.D. Cal. Sept. 7, 2022) ("As the grievances did not identify …

2   actions taken by [defendant Fox] and were filed before plaintiff's claim against defendant Fox

3   arose, the grievances could not alert the prison to the harm stated in plaintiff's claim against

4   defendant Fox as this harm had not yet occurred. … Therefore, these grievances cannot exhaust

5   plaintiff's claim against defendant Fox"); *Patkins v. Ferguson*, No. 18-cv-05139-EMC, 2020 WL

6   978649, at *7 (N.D. Cal. Feb. 28, 2020) ("Mr. Patkins' inmate appeals that mentioned retaliation

7   generally and some specific acts of retaliation did not suffice to exhaust administrative remedies

8   for other specific acts of retaliation that were not mentioned in the inmate appeals"); *Ethridge v.*

9   *Rodriguez*, No. 1:12-cv-2088 AWI SAB PC, 2015 WL 13237012, at *7 (E.D. Cal. Nov. 13, 2015)

10  ("Administrative remedies are not exhausted as to any new issue, information or person later

11  named by the appellant prisoner that was not included in the originally submitted CDCR Form

12  602 and addressed through all levels of administrative review").

13       For the reasons discussed above, even viewing the evidence in the light most favorable to

14  Plaintiff, the Court finds Defendant Rudas has met his initial burden of showing the existence of

15  an available administrative remedy and that Plaintiff failed to exhaust that remedy as concerns his

16  claim that Defendant failed to provide adequate medical care. *Albino,* 747 F.3d at 1166, 1172.

17  The burden now shifts to Plaintiff to "come forward with evidence showing that there is

18  something in his particular case that made the existing and generally available administrative

19  remedies effectively unavailable to him." *Id.*

20               **2.    Plaintiff Has Failed to Meet His Burden of Production**

21       First, the Court notes that Plaintiff disputes UDF numbers 2 through 4 and 7. As concerns

22  UDF 2—"Serrano filed his Complaint on July 28, 2022, alleging that Defendant R. Rudas, M.D.

23  failed to address pain in his knee resulting from prior surgeries, and failed to provide appropriate

24  medical care resulting in the amputation of his leg"—Plaintiff states: "Plaintiff deny plaintiff

25  made the statement made by defendant." (Doc. 47 at 6.) But UDF number 2 does not attribute any

26  statement to Plaintiff; rather, it merely summarizes the allegations in Plaintiff's complaint.

27  Plaintiff's objection should be overruled. *Anderson*, 477 U.S. at 248.

28       As concerns UDF numbers 3 and 4 regarding the health care grievance process, Plaintiff

argues "Plaintiffs' denys [*sic*] that this Cal. Code Regs., tit. 15, §§ 3999.227-399.237 was the Rules and Regulation for the California Code of Regulations Title 15, which govern the inmate appeals process, and was already available to any inmate in the [CDCR] in 2018." (Doc. 47 at 8-9.) Plaintiff admits that before September 1, 2017, health care appeals were governed by "sections §§ 3084-3086…and plaintiffs will admit that in 2019 the health care grievances section was changed without regulatory effect and can now be found at Title 15, §§ 3999.225-3999.237 …." (*Id*. at 9.) Plaintiff's objections to UDF numbers 3 and 4 do not present a genuine issue of material dispute. Regardless of which section of the California Code of Regulations applies to Plaintiff's grievance, this record demonstrates that administrative remedies were available to Plaintiff. His objections should be overruled. *Anderson*, 477 U.S. at 248.

As concerns UDF 7, Plaintiff alleges his grievance MCSP HC 18002563 asserts "that he was being denied any helpful medical treatment or any helpful medication," citing to his complaint at page 2, lines 1-16.[5] (Doc. 47 at 9.) But as this Court found above, that grievance exhausts only Plaintiff's claim that Defendant Rudas discontinued his pain medication, in significant part because Plaintiff had not yet been seen by Defendant at the time his grievance was submitted. Thus, Plaintiff's objection to UDF number 7 should be overruled. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations"); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (a mere allegation does not create a factual dispute).

Further, to the extent Plaintiff's opposition to Defendant's summary judgment motion relies solely on the allegations asserted in his original complaint, such reliance is insufficient to meet his burden of production. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11.

Next, to the extent Plaintiff argues the merits of his claims in his opposition, those arguments are not appropriate. Defendant's summary judgment motion concerns the exhaustion of administrative remedies only. *See, e.g.*, *Williams v. Thompson*, No. 1:19-cv-00330-AWI-CDB

---

[5] The Court's CM/ECF system designates this page as "Page 5" despite Plaintiff's handwritten entry designating that page of his complaint as "(2)."

1   (PC), 2023 WL 2823388 at *1 (E.D. Cal. Apr. 7, 2023) ("at this stage of the proceedings,

2   defendants' motion for summary judgment is based on non-exhaustion of remedies and does not

3   address the merits of his constitutional claims"). Hence, the merits of Plaintiff's claims were not

4   considered here and would be addressed only in any later filed summary judgment motion not

5   involving the exhaustion of administrative remedies, if appropriate.[6]

6           Finally, Plaintiff does not argue administrative remedies were unavailable to him. And

7   nothing in this record indicates the administrative grievance procedure at Mule Creek State Prison

8   "operates as a simple dead end," or is "so opaque that it becomes … incapable of use," or that any

9   prison officials thwarted Plaintiff "from taking advantage" of the process by "machination,

10  misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

11          In short, Plaintiff has failed to meet his burden to produce evidence indicating "there is

12  something in his particular case that made the existing and generally available administrative

13  remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172. Nor has Plaintiff shown that

14  the materials cited by Defendant do not establish the absence of a genuine dispute. Fed. R. Civ. P.

15  56(c); *Matsushita*, 475 U.S. at 586.

16                              ***Summary***

17          The Court finds that the MCSP HC 18002563 grievance did not exhaust Plaintiff's

18  administrative remedies regarding his deliberate indifference to serious medical needs claim

19  against Defendant Rudas for a failure to provide adequate medical care. Therefore, the

20  undersigned will recommend Defendant's motion for partial summary judgment be granted.[7]

21  **IX.     CONCLUSION AND RECOMMENDATION**

22          Based upon the foregoing, this Court **HEREBY RECOMMENDS** that:

23          1.   Defendant's motion for partial summary judgment based on Plaintiff's failure to

24

25  [6] *See* Doc. 29 (Discovery and Scheduling Order issued 7/10/2024) at 3 ("The deadline for filing all dispositive
    motions (other than a motion for summary judgment for failure to exhaust) is May 19, 2025" [emphasis omitted]).

26

27  [7] To be clear, Plaintiff's claim concerning Defendant Rudas's discontinuation of pain medication is exhausted and
    therefore the Court's recommendation does not affect that claim. Assuming the recommendation were to be adopted
    by the presiding district judge, this action would proceed against Defendant Rudas on that claim alone.

28

1    exhaust his claim that Defendant Rudas failed to provide adequate medical care (Doc.

2    39) be **GRANTED**; and

3    2.    Plaintiff's claim against Defendant Rudas alleging a violation of the Eighth

4    Amendment for deliberate indifference to Plaintiff's serious medical needs based on

5    the allegation that Defendant Rudas failed to provide adequate medical care be

6    **DISMISSED** without prejudice.

7    These Findings and Recommendations will be submitted to the United States District

8    Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**

9    after being served with a copy of these Findings and Recommendations, a party may file written

10    objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to

11    Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without

12    leave of Court and good cause shown. The Court will not consider exhibits attached to the

13    Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the

14    exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

15    reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be

16    disregarded by the District Judge when reviewing these Findings and Recommendations under 28

17    U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result

18    in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

19    IT IS SO ORDERED.

20    Dated:    **May 21, 2025**

21    UNITED STATES MAGISTRATE JUDGE